[Civ. No. 12808. Second Dist., Div. One. Apr. 2, 1942.]

DOMINGUEZ ESTATE COMPANY (a Corporation), Appellant, v. A. B. RUDDOCK, Respondent.

Earl D. Killion for Appellant.

Garnet C. Rainey, Edward D. Neuhoff and Montgomery G. Rice for Respondent.

YORK, P. J.—This action, tried upon a stipulated state-ment of facts, was brought to recover rent under a fifty-year lease dated June 1, 1912, between R. M. Baker, as lessor, and E. P. Bryan and L. T. Bradford, as lessees, covering certain real property located at 833 South Spring Street in the city of Los Angeles.

It was stipulated that on August 10, 1916, Edna Price became the owner in fee of said property, as devisee under the will of said R. M. Baker, the original lessor, and on August 21, 1918, L. D. Sale by mesne assignments succeeded to all the interest of Bryan and Bradford, the original lessees under said lease. On January 25, 1922, Edna Price and her husband, and the said L. D. Sale entered into an agreement modifying the terms of the original lease with respect to the construction on the premises of a $50,000 building. On December 14, 1923, said lessee, L. D. Sale, and his wife, Katherine M. Sale, transferred all their rights in the lease to A. B. Ruddock, the respondent herein. The last named parties on the same date executed an instrument in writing (which was attached to said assignment) whereby a modification of the building agreement of January 25, 1922 between Price and Sale was made.

On January 7, 1924, respondent Ruddock and his wife granted and assigned to the Southwestern Development Company "a certain Indenture of Lease, bearing date the 1st day of June, 1912." On that day respondent Ruddock surrendered actual possession of the leased premises to said Southwestern Development Company, and since that time has disclaimed any right, title or interest in or to said lease agreement of June 1, 1912. On March 31, 1924, the Southwestern Development Company entered into an agreement whereby it leased to the Los Angeles City Club (for a period of 20 years after the date of its completion), the building proposed to be erected upon the premises covered by the original lease. On November 17, 1924, the building contemplated by the lease and the modification agreements heretofore referred to was constructed, completed and fully paid for.

On October 25, 1926, Edna Price, a widow, as owner and lessor, deeded the property and assigned the lease of June 1, 1912, to City Bond & Finance Company, which corporation on October 26, 1926 deeded the property and assigned the lease to Maria De Los Reyes D. de Francis, who on February 23, 1929 conveyed the real property to Dominguez Estate Company, appellant herein, reserving to herself as grantor a life estate therein including rents, issues and profits arising therefrom during the term of her natural life.

Following January 7, 1924, Southwestern Development Company paid rental under the terms of the original lease of June 1, 1912 to the respective owners of the leasehold interest and from July 7, 1933 said corporation paid rental to appellant, Dominguez Estate Company, which corporation acquired a fee simple title to the property on June 4, 1933, the date of the death of Maria etc. de Francis, the life tenant.

In August of 1932, said Maria etc. de Francis granted the Southwestern Development Company a reduction in the rental from $1,000 to $750 per month, which amount was paid to and including December, 1932. On January 4, 1933, the rental was reduced to $600 per month which sum was paid to and including April, 1937. On April 19, 1937, appellant notified Southwestern Development Company that it would no longer accept rental at the rate of $600 per month but would require the payment of $1,000 per month, as provided by the terms of the lease. Said rental was paid up to and including September 30, 1938, the said Southwestern Develop-

ment Company having abandoned possession of the premises on September 28, 1938.

It was further stipulated that when appellant acquired title to the real property it knew that Southwestern Development Company was in possession of the premises as lessee under an assignment from respondent Ruddock. Further, that respondent had paid none of the rental or taxes under the terms of the original lease since January 7, 1924 (the date of the assignment by him to Southwestern Development Company), and that none of appellant's predecessors in interest at any time ever made demand upon respondent that he pay the rental, nor did they inform him that he was liable or obligated to perform the terms and provisions of the original lease.

On November 15, 1938, prior to the commencement of the instant action, appellant for the first time notified respondent that it would hold him personally responsible for payment of all rental, taxes, etc., as provided for in the original lease. The instant action was filed on January 12, 1939 to recover rental due for the months of October, November, December, 1938, and January, 1939, at the rate of $1,000 per month.

█ This appeal is prosecuted from the judgment of the trial court rendered in favor of respondent Ruddock, it being stated in appellant's opening brief as follows:

"Apparently the trial court sustained the contention of the defendant and respondent and held that the said A. B. Ruddock was not liable for any rent or other charges under the lease after the building had been erected and completed in accordance with the terms of the lease agreement. It is the contention and claim of the appellant, however, that the said A. B. Ruddock was not released by the completion of the building and that he is still liable for the obligations of the lease until such time as he might make an assignment in the form of assignment as provided in the lease agreement, being the latter part of paragraph 8 . . . which provides that such assignment shall be evidenced in writing, fully executed and acknowledged by the assignee or assignees, as well as the assignors, and whereby the assignee or assignees shall expressly accept and assume all the terms and covenants of the lease to be kept and performed by the lessees and will agree to comply with and be bound by them . . ."

Paragraph 8 of the lease of June 1, 1912, provides as follows: "It is further covenanted and agreed that the Lessees may sell, assign or transfer this lease before they shall have constructed or paid for the building on said premises of the character and within the time hereinbefore specified, but in the event of such an assignment, sale or transfer before the final completion of said building, the Lessees herein shall remain and do hereby hold themselves personally responsible for the construction and completion of said building and for the rents due and to grow due and the performance of all other obligations of this lease until such time as said building is constructed and paid for.

"After said building . . . has been erected and completed in conformity with the requirements of this lease . . . the Lessees may sell, assign and transfer this lease and their interest in said leasehold premises and the buildings thereon provided that all rents, taxes, assessments, insurance and other charges of every kind shall have been paid to the date of such assignment and all covenants and agreements herein contained on the part of said Lessees to be kept and performed shall have been fully complied with at the date of such assignment or conveyance; and further provided that in case of said sale or assignment of said lease the same shall be evidenced in writing, fully executed and acknowledged by the assignee or assignees, as well as the assignors, and duly recorded . . . wherein and whereby the assignee or assignees shall expressly accept and assume all the terms and covenants in this indenture contained, to be kept and performed by the Lessees, and will agree to comply with and be bound by them, and the said Lessees herein . . . agree that they will not make any assignment of this lease or any interest therein except in the manner and upon the conditions as above set forth, and it is agreed and notice is hereby given that any assignment of said lease, lease-hold interest or any interest therein, not in strict conformity with these provisions shall be null and void, provided, however, that in the event that said lease is assigned in good faith and in accordance with the terms and conditions of this paragraph hereinbefore set forth and duly recorded as herein provided and fully accepted in all its terms by the assignee or assignees, as herein contemplated, that then and in that event the Lessees so assigning and conveying said lease . . . shall thereafter and thereby be forever released and

discharged from the obligations of this lease on their part to be kept or performed, provided they are not then in default in any of the obligations thereof, on their part to be kept and discharged. In the event of any assignment under the terms and conditions herein set forth, said assignee and all succeeding assignees shall be subject to the same terms and conditions as to future assignments.''

The court interpreted the 8th paragraph of the lease as follows: ''III. The court finds, as to the provisions for assignment of said lease dated June 1, 1912, by the lessees, and as to the liability of such assigning lessees, that the language of the first sentence of the eighth paragraph of said lease provides and specifies and means that the original lessees, or any assignees of the original lessees, shall have the right to sell, assign or transfer the said lease before the building specified in the lease should be completely constructed and paid for, but that if said lessees or their assignees should so sell, assign or transfer before such completion and construction, they and each of them should nevertheless remain and continue to be personally responsible for the construction and completion of the said building and for the payment of the rents due or to grow due or accruing prior to said completion and for the performance of all other obligations of the lease by said lease required to be performed only until such time as said building was constructed and paid for, and that said language of paragraph eight also provides and specifies and means that from and after the completion of and payment of said building, no further liability or duty or performance of any sort should accrue or become due from any such original lessee or assignee who had himself sold, assigned or transferred all his interest prior to such completion and full payment.

''The court finds that the second and third sentences of said eighth paragraph of said lease provide and specify and set forth the conditions prerequisite to any assignment of the said lease by the lessee made subsequent to the completion of and payment for said building, and provides for and defines the liabilities and duties of the assignor and assignee of any assignment made after the completion of the said building, and the court finds that said second and third sentences do not affect or have any bearing upon the making of any assignment of the lease by the lessee prior to such building completion or the liability of any assignor, who assigned the lease

prior to the construction, completion and payment for said building.''

''The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity.'' (Civ. Code, sec. 1638.)

An examination of the eighth paragraph of the lease reveals that it is made up of two paragraphs, the first concerning assignments made before the completion of the contemplated building upon the premises, and providing in the event of an assignment before such completion, such assigning lessee shall remain personally responsible for the performance of all obligations under the lease until such time as said building shall have been constructed and paid for. The second paragraph of paragraph eight concerns assignments made after the completion of the building, and sets forth in detail the manner and form in which such an assignment shall be made at that time.

In view of the clear and explicit language of the said eighth paragraph of the lease, the interpretation placed upon it by the trial court must be sustained as a matter of law. Since respondent Ruddock assigned the lease to the Southwestern Development Company in January, 1924, at which time the contemplated building had not been erected on the property, he cannot be held responsible for nonpayment of rent by his assignee which rental accrued long after the completion of the building to wit: in October, November, December, 1938, and January, 1939.

For the reasons stated, the judgment appealed from is affirmed.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied April 28, 1942, and appellant's petition for a hearing by the Supreme Court was denied May 28, 1942.